**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eugene William CONRAD,
Defendant-Appellant.**

**No. 78–2244.**

United States Court of Appeals,
Ninth Circuit.

June 6, 1979.

Andrea Sheridan Ordin, U.S. Atty., Los Angeles, Cal., for appellant-petitioner.

James D. Riddet, Monroe & Riddet, Santa Ana, Cal., for appellee-respondent.

Before CHAMBERS and TANG, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, District Judge.

Eugene William Conrad appeals from a denial of his motion to withdraw his plea of guilty to a charge of wire fraud and from the judgment of conviction and sentence based on his guilty plea.

Conrad was indicted in May 1977 on four counts of wire fraud and three counts of travelling between states in furtherance of fraud.

Conrad, who organized "Pension Funds of America", was accused of fraudulently representing that he could obtain large loans for commercial clients. He collected 1.4 million dollars in advance fees but did not arrange a single loan. He admitted that, during an interstate telephone call, he misrepresented the availability of funds to a client when he knew he could not arrange the loan.

Conrad was on probation for state crimes when he was indicted. His probation was to end on July 10, 1978. The case was continued several times from July 1977 until February 21, 1978 when Conrad entered a plea of guilty to one count of wire fraud.

The plea was the result of a plea bargain in which the United States Attorney agreed to dismiss the other six counts and agreed not to pursue any other charges for Conrad's known activities including a possible firearms charge and criminal tax charges. The United States Attorney also agreed that Conrad would be sentenced to no more than three and one-half years and a $1000 fine.

The record of the hearing at which Conrad entered his plea is 49 pages long. Conrad was placed under oath at the beginning of this hearing, and actively participated, but the court failed to inform him that he could be prosecuted for false statements made under oath.

In response to the court's questions, Conrad said that he had read the indictment, discussed it with his lawyer and understood it.

The court, in accordance with Rule 11(c), Fed.R.Crim.P., read Conrad his rights.

The court discussed with Conrad possible direct and collateral consequences of the plea, including possible civil tax actions, other civil actions, and state probation violation proceedings.

The court ascertained that the plea was made voluntarily and not as a result of

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

force or threats. It also ascertained that there were no promises other than those contained in a plea agreement, the terms of which were discussed in detail. The court also informed Conrad that it would defer acceptance or rejection until after it examined the presentence report and that if the court rejected the plea agreement Conrad could withdraw his plea. Otherwise the court would be governed by the plea agreement in the judgment and sentence.

Conrad's sentencing was scheduled for April 3 but on that day Conrad's attorney sought to withdraw as the attorney and Conrad moved to withdraw his guilty plea contending that he never intended to defraud anyone.

The United States Attorney opposed Conrad's motion and submitted a statement from a California probation officer that, on February 22, the day after Conrad had entered his plea, Conrad called him to explain the guilty plea. Conrad told the probation officer that his guilty plea was a "tactical maneuver", intended to gain concessions from the government, which would be withdrawn. Conrad insisted that he did not violate his state probation because he would not be convicted. He asked the probation officer not to terminate his probation. Conrad repeated these statements to the probation officer during several later conversations.

The district court found that Conrad had attempted to abuse the process of the court and denied Conrad's motion to withdraw his guilty plea. The court, in accordance with the plea agreement, sentenced Conrad to three and one-half years imprisonment and imposed a $1000 fine. Conrad later filed a post-sentencing motion to withdraw his guilty plea. The court denied this motion.

Conrad contends that he is entitled to withdraw his guilty plea because the court failed to comply with the provisions of Rule 11, in that (1) no factual basis for this charge was established, (2) the court did not properly discuss the nature of the charge, (3) he was not told that he could be prosecuted for perjury if he lied under oath, and (4) he was not told the penalties for wire fraud.

There is no merit in any of these contentions.

■ The court discussed the events underlying this charge with Conrad and the attorneys. Conrad admitted that he misrepresented his ability to arrange a loan during an interstate telephone conversation. Evidence that Conrad did not have legitimate contacts with pension funds was summarized. This would show that Conrad did not expect to arrange any loans but intended to defraud his clients. The court adequately explored the factual basis for Conrad's plea. *Guthrie v. United States*, 517 F.2d 416 (9th Cir. 1975).

The court, by its questioning, ascertained that Conrad was intelligent and articulate. The court asked Conrad if he had read the indictment, understood it, and had discussed it with his lawyer. Conrad answered in the affirmative. The court discussed the charge with Conrad and the attorneys while it explored the factual basis for the plea. In light of subsequent events, particularly the statement of the state probation officer, it appears that Conrad was attempting to create a situation which would require the court to grant the motion which he intended to file to set aside his plea of guilty. Conrad's contributions to this conversation, and these events, nevertheless show that he understood the charge. *See United States v. Kriz*, 586 F.2d 1178 (8th Cir. 1978). There was no need to give Conrad a jury instruction. *United States v. Saft*, 558 F.2d 1073, 1079 (2d Cir. 1977). Rule 11(c)(1) was complied with.

■ Conrad next contends the court failed to follow Rule 11(c)(5) which required it to:

"inform him of, and determine that he understands . . . that if he pleads guilty . . . the court may ask him questions . . . and if he answers these questions under oath, . . . his answers may later be used against him in a prosecution for perjury".

The government concedes that the court did not tell him that his answers under oath

could be used against him in a prosecution for perjury. But the government argues that this neglect does not entitle Conrad to withdraw his plea.

Conrad places his principal reliance on *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), to support his contention that he is entitled to withdraw his plea. *McCarthy* was based on an earlier form of Rule 11 which required the court to address the defendant personally and determine "that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." 394 U.S. at 463 n.4, 89 S.Ct. at 1169 n.4. The court held "that prejudice inheres in a failure to comply with Rule 11, for non-compliance deprives the defendant of the Rule's procedural safeguards that are designed to facilitate a more accurate determination of the voluntariness of his plea." 394 U.S. at 471–72, 89 S.Ct. at 1173. The remedy for a Rule 11 violation was to permit a defendant to plead anew.

Rule 11 was expanded by amendments in 1975. The Supreme Court proposed that statements made in connection with a guilty plea would not be admissible in any other proceeding. Proposed Rule 11(e)(6), H.R.Doc. No. 292, 93d Cong., 2d Sess. 6; 62 F.R.D. 271, 276–77. The Committee on the Judiciary of the House of Representatives recommended that Rule 11(e)(6) provide that evidence of a statement is admissible for a perjury prosecution and simultaneously proposed the language which is now Rule 11(c)(5) because:

> "the committee thought it only fair that the defendant be warned that . . . his statements made in connection with such pleas or offers, could later be used against him in a perjury trial." H.R.Rep. No. 247, 94th Cong., 1st Sess. 7, U.S.Code Cong. & Admin.News, 1975, pp. 674, 679.

Congress adopted the Committee's language. The legislative history of Rule 11(c)(5) establishes that "[f]airness, not voluntariness, is the concept underlying Rule 11(c)(5)." *United States v. White*, 572 F.2d

1007, 1009 n.4 (4th Cir. 1978). Other parts of Rule 11 are intended to insure that guilty pleas are voluntary; subsection (c)(5) is intended to insure that perjury prosecutions are fair.

The Second Circuit has refused to allow defendants to withdraw guilty pleas in spite of violations of Rule 11(c)(5). *United States v. Saft, supra; United States v. Michaelson*, 552 F.2d 472 (1977). The Fourth Circuit also considered this issue in connection with a § 2255 motion and decided that a violation of Rule 11(c)(5) is not a fundamental defect which entitles a defendant to withdraw his plea. *White, supra.*

Conrad cites cases from other circuits which he asserts hold that a violation of Rule 11(c)(5) entitles a defendant to withdraw his plea. *United States v. Journet*, 544 F.2d 633 (2d Cir. 1976); *United States v. Boone*, 543 F.2d 1090 (4th Cir. 1976). In each of these cases there were other violations of Rule 11. In *Journet*, the court also failed to inform the defendant of:

> "(1) his right not to be compelled to incriminate himself; (2) that if he pleaded guilty there would be no further trial of any kind; . . . [and] (4) that the maximum sentence could include, in addition to 15 years imprisonment, a life-time parole." 544 F.2d at 634–35.

In *Boone*, the court failed to inform the defendant that he could not be compelled to testify against himself and, that if his plea was accepted, there would be no trial of any kind. These failures are per se violations of Rule 11 because they go to the voluntariness of a plea.

Here the record shows that Conrad's plea was freely and voluntarily made and that Conrad was anxious for the court to accept it in order for him to engage in a tactical maneuver to delay his conviction until the end of his state probation. The court's failure to warn counsel of the possibility of a perjury prosecution did not cause him to suffer any prejudice or affect the voluntariness of his plea.[1]

---

1. In the unlikely event that the government should attempt to prosecute Conrad for perjury he would be entitled to assert the court's fail-

ure to warn him in accordance with Rule 11(c)(5) as a bar to the prosecution.

Conrad also contends that the court violated Rule 11 when it did not specifically inform him of the penalties "provided by law" for wire fraud. Conrad contends that this was a violation of Rule 11(c)(1) which entitles him to plead anew.

This court has already stated that an objective of Rule 11(c)(1) is "to insure that a defendant knows the maximum sentence a judge may impose." *United States v. Hamilton*, 568 F.2d 1302, 1305 (9th Cir.), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2846, 56 L.Ed.2d 785 (1978). The court carefully informed Conrad of all direct and collateral consequences of his plea. It specifically told him that, in accordance with the plea bargain, it could put him on probation or sentence him to imprisonment for up to three and one half years and impose a fine of $1000. *See Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The court also told Conrad it could reject his plea if it decided that he deserved a longer sentence. Here, as in *McCarthy*, " '[m]atters of reality, and not mere ritual, should be controlling.' " 394 U.S. at 468 n.20, 89 S.Ct. at 1171 n.20, quoting *Kennedy v. United States*, 397 F.2d 16, 17 (6th Cir. 1968).

The court informed Conrad of the penalties it could impose under the plea bargain.

In our view, this was sufficient.

Conrad finally contends that he was denied the right to counsel when his appointed counsel withdrew and he represented himself at the hearing on his motion to withdraw his guilty plea and at the sentencing. Conrad was repeatedly informed of his right to counsel. He did not object to the withdrawal of appointed counsel. He had been represented by appointed counsel at every prior hearing, and he knew he could have new appointed counsel. Instead he chose to represent himself with an attorney of his own selection, who was not admitted to practice in the federal court, sitting by his side and giving him advice. Conrad knowingly and voluntarily waived his right to counsel.

We have considered and reject each of Conrad's contentions.

AFFIRMED.